## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:13-cr-00054 (MPS) |
| | : | |
| v. | : | |
| | : | |
| DOMINIQUE MACK, | : | |
| | : | |
| Defendant. | : | |

_____

### RULING ON DEFENDANT MACK'S MOTION TO SEVER/BIFURCATE COUNTS 13 AND 14

A federal grand jury has indicted Dominique Mack for witness tampering/homicide offenses as well as offenses charging the possession of a firearm by a convicted felon. Jury selection is scheduled for April 6. Mack recently moved to bifurcate the trial, so that the jury would consider the witness tampering/homicide charges before hearing evidence of the felon-in-possession charges, and thus would not learn of Mack's felony convictions until after it had rendered a verdict on the witness tampering/homicide charges. The Government opposes the motion. For the reasons set forth below, I grant the motion.

## I.     BACKGROUND

### A.  The Charges and Other Procedural History

The Amended Second Superseding Indictment (ECF No. 299-1) sets forth the following charges against Dominique Mack: (1) that from November 1, 2010, to January 15, 2011, Mack conspired with others to murder Ian Francis to prevent Mack's attendance in proceedings at this Court, and to prevent Francis or another person from communicating with a law enforcement officer or judge about narcotics trafficking, in violation of 18 U.S.C. § 1512(k) (Count One); (2) that on December 21, 2010, Mack killed Francis to prevent Mack's attendance at proceedings in

1

this Court, in violation of 18 U.S.C. §§ 1512(a)(1)(A) and 2 (Count Two); (3) that on December 21, 2010, Mack killed Francis to prevent Francis or another person from communicating with a law enforcement officer or judge about narcotics trafficking, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 2 (Count Three); (4) that from March 2014 to March 2015, Mack conspired with others to murder C.J. to prevent C.J. from attending Mack's criminal trial, in violation of 18 U.S.C. § 1512(k) (Count Four); (5) that on December 21, 2010, Mack, a convicted felon, possessed a firearm in or affecting commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Thirteen); and (6) that on June 15, 2011, Mack, a convicted felon, possessed a firearm in or affecting commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Fourteen).

The Government contends that the gun allegedly possessed by Mack on December 21, 2010—the date Ian Francis was shot—and June 15, 2011— the date of Mack's arrest—is the same gun used to shoot Francis. The Government has proffered that when Mack was arrested in an apartment on Vine Street in Hartford on June 15, 2011, the gun in question, a Ruger SR9c, 9mm semi-automatic pistol, was found in the apartment. (The Government has also acknowledged that it believes the same gun was used in other shootings, including some committed by persons other than Mack.)

The felony convictions identified in Counts Thirteen and Fourteen of the Indictment are possession of a firearm with altered identification mark, in violation of Conn. Gen. Stat. § 29-36(a) on March 12, 2007, and theft of a firearm, in violation of Conn. Gen. Stat. § 53a-212(a) on March 12, 2007.

The Government has provided notice that it will seek to introduce at trial evidence of other acts of violence and narcotics trafficking by Mack under Fed. R. Evid. 404(b), including

that he possessed the Ruger pistol on dates other than December 21, 2010, and June 15, 2011, that he used the pistol to shoot a rival on another occasion, and that he instructed others to use the pistol to help protect his "territory" for narcotics dealing. I have denied Mack's motion in limine seeking to bar this evidence (ECF No. 292), and I anticipate that I will give limiting instructions when this evidence is introduced. While I am not yet aware of the precise nature of all the defenses in this case, it is apparent from pretrial hearings that Mack will argue that the Government's case is highly circumstantial, and that the only direct evidence of his involvement in the murder and the related conspiracies will come from the testimony of jailhouse informants, convicted felons seeking to curry favor with the Government, and other witnesses who seek to minimize their own involvement in Francis's death by pointing the finger at Mack.

**B.  Mack's Motion to Bifurcate Trial**

On March 23, 2016, Mack filed a motion (ECF No. 297) proposing the following bifurcated trial procedure: "Mr. Mack seeks to have no mention of Counts 13 and 14 be made to the jury, including the preclusion of any evidence specific to those counts (*e.g.*, prior conviction, interstate commerce), until after the jury has reached its verdict as to Counts One through Four." (*Id*. at 4.) Once it has done so, "evidence would be presented to the [same] jury [relating specifically to Counts 13 and 14]," and the jury would be "allow[ed] … to consider evidence already received." (*Id*.) Mack anticipates that the "second portion of the case would be relatively brief," would consist of "very limited" additional evidence and argument, and would not affect the number of days needed for the trial as a whole. (*Id*.) Mack argues that failing to adopt this proposal would make the jury aware of his felony convictions while it was considering the witness tampering/homicide charges, and that this would be unfairly prejudicial.

3

In opposing the motion, the Government argues that the gun counts were properly joined in the indictment under Rule 8 of the Federal Rules of Criminal Procedure—a point that Mack does not contest—, and that Mack has not made the showing of "substantial prejudice" required for "relief from prejudicial joinder" under Rule 14. *See* Fed. R. Crim. P. 8(a) (indictment may charge two or more offenses if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."); Fed. R. Crim. P. 14(a) ("If the joinder of offenses … in an indictment … appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."); *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (because Rule 8(a) authorizes "some prejudice" against the defendant from joinder of offenses, "a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'"). The Government contends that Mack cannot show "substantial prejudice," because it expects that evidence of the felony convictions would be presented by way of a "sanitized stipulation," thereby preventing the jury from learning the nature of the prior convictions. (ECF No. 300 at 8.) The Government also argues that the jury will in any event hear a great deal of unflattering evidence about Mack, evidence that will make his status as a felon pale by comparison: that Mack had been indicted on narcotics trafficking charges, that he committed the murder charged in Counts Two and Three to avoid apprehension on those charges, and that he sought to kill another witness who, he learned, was going to testify against him on the original murder charges. The Government contends that the bifurcation procedure Mack proposes would unduly burden the jurors, who "will have just been tasked with a very emotional and difficult decision" as to whether or not Mack is guilty of the witness tampering/homicide charges, and then will "be told that their duty is not over"

because they will need to stay to hear additional evidence, argument, and instructions related to the felon-in-possession charges. (ECF No. 300 at 9-10). Finally, the Government argues that in the proposed second phase of the trial on the felon-in-possession charges, it might have to re-present some of the same evidence it presented to support Counts One through Four, because the jury "will not know to focus on the defendant's possession of the firearm" when they hear the evidence being presented the first time. (*Id*. at 10.)

## II.   DISCUSSION

Although this is a close call, I find that the prejudice from injecting Mack's status as a felon into the jurors' deliberations over whether he is guilty of the witness tampering/homicide offenses is "substantial" enough to warrant bifurcation of the trial. I reached this conclusion after considering the evidence the jury is likely to hear on Counts One through Four, and then carefully weighing the incremental prejudice to Mack from making the jury aware of his status as a felon against the incremental burden of trying the case in two phases. That analysis traces the path illuminated by the Second Circuit's cases. While it is now clear in the Second Circuit that a felon-in-possession charge need not "*always* be severed from other charges," *United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011), it is equally clear that a district court may bifurcate "a felon-in-possession charge from other charges in a single multi-charge trial where doing so would better protect the defendant from prejudice than a limiting instruction, and the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice and bifurcating the trial of that charge would provide such protection." *Id.* The "substantial prejudice" standard articulated by the Second Circuit under Rule 14 is a contextual one that weighs not only the quantity and quality of the "spillover" effects resulting from joinder but also the inefficiencies and other costs associated with holding separate trials.

*United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) ("[a] defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to *outweigh* the judicial economy that would be realized by avoiding multiple lengthy trials." (emphasis added)). In other words, the Rule 14 inquiry calls upon the Court to weigh the added prejudice from trying multiple offenses against the extra time, inconvenience, and burden associated with conducting multiple trials. In this case, the scale tips slightly in favor of bifurcation.

On the prejudice side of the scale is obviously the fact that in a joint trial the jury will learn of Mack's status as a convicted felon. By itself, this means little. *Page*, 657 F.3d at 132 ("We reject Page's contention that a felon-in-possession charge must *always* be severed from other charges."). Mack's felony convictions are salient in this case, however, because they are one of very few pieces of "bad" evidence directly tied to Mack that the defense will not be able realistically to dispute or otherwise explain. Much of the direct evidence tying Mack directly to Francis's killing will come from interested witnesses—persons incarcerated on other offenses who know Mack or his associates, persons who had dealings with Mack on the day Francis was killed and were in proximity to the shooting, and persons who are cooperating with the Government. The same witnesses will be the source of the Rule 404(b) evidence of Mack's other "bad" acts. Mack's lawyers will no doubt vigorously attack all of that evidence. But one "bad" act they will be unable to contest is the act that led to Mack's prior felony conviction; and even though that act will not be identified to the jury,[1] the jury will know—when they listen to defense counsel attacking those testifying about other crimes Mack supposedly committed—that on at least one occasion, Mack indisputably did commit a crime, and was consequently found

---

[1] Defense counsel reported today at the pretrial conference that they have agreed to the Government's proposed stipulation regarding the prior felonies, which, the Government earlier reported, would obviate the need to identify those felonies.

guilty of a felony. That circumstance, though not properly considered when assessing witness credibility, will likely take some of the steam out of the defense cross-examinations, and Mack, who faces a mandatory life sentence if convicted of any of Counts One through Three, may start out with an indelible mark against him in the eyes of the jurors.

To be sure, in a joint trial, the Court would do its best to avoid such an impact, instructing the jury to consider the prior felonies only as to Counts Thirteen and Fourteen, and then only as to the prior felony element of those offenses. But this trial will already be full of limiting instructions aimed at properly cabining otherwise inflammatory evidence—especially the limiting instructions on the Rule 404(b) evidence. Limiting instructions are easier for lawyers and judges than for jurors to understand, and the more there are in a trial, the greater the risk of confusion and prejudice. Further, the particular limiting instructions needed for a joint trial with the felon-in-possession counts might be especially confusing in this case. As Mack has acknowledged, evidence that he possessed the same handgun used to kill Francis on December 21, 2010, and June 15, 2011, and on other dates, is plainly relevant to Counts One through Three. So, if all counts were tried together, the Court would have to instruct the jury that it could consider evidence of possession of the gun on Counts One through Three. Specifically, it would have to instruct the jurors that they could consider evidence of possession of the gun on December 21, 2010, and June 15, 2011, as both proof of Counts One through Three and proof of the possession element of Counts Thirteen and Fourteen; but that they could consider the felony convictions only as proof of the prior felony elements of Counts Thirteen and Fourteen, and not for any purpose as to Counts One through Three. That is complicated enough, but it could get worse. An even more intricate instruction might be necessary to channel the jury's consideration of evidence of Mack's possession of the gun on dates *other than* December 21, 2010, and June

7

15, 2011. The Court might have to instruct the jury that, to the extent it found that Mack possessed the gun on other dates, it could not treat as propensity evidence his status as a felon when he did so, that is, the jurors could not consider the fact that Mack might be guilty of other uncharged misconduct—possession of a firearm by a convicted felon on dates other than December 21, 2010, and June 15, 2011—as propensity evidence in deciding whether (1) he was guilty of the witness tampering/homicide charges, and (2) he was guilty of being a felon-in-possession on December 21, 2010, and June 15, 2011.[2] Following any such instruction would require the jury to engage in mental gymnastics. Under these circumstances, I find that "a limiting instruction cannot adequately protect" Mack from the prejudicial effects of injecting his felony conviction(s) into the murder trial. *Page*, 657 F.3d at 132.

On the other side of the scale, bifurcation in this case would not involve "multiple lengthy trials." *Walker*, 142 F.3d at 110. Defense counsel have represented to the Court that they will enter into a stipulation as to the prior felony element—one that would obviate the need for specific evidence of the prior felonies, *see Old Chief v. United States*, 519 U.S. 172 (1997)—and that they will also stipulate to the interstate commerce element. They have also agreed that the jurors could consider all the evidence that they would have already heard in the first phase of the trial in deciding the possession element during the second phase. While it is true that I will have to provide the jurors with additional instructions on Counts Thirteen and Fourteen, and the lawyers will be entitled to present additional argument, it appears likely that the second phase of the trial would be substantially shorter—probably no more than two days. Given the time allotted for the trial as whole, and the parties' estimates for the time needed, these two days could likely

---

[2] Although, in theory, some reduced version of that instruction might be necessary during the second phase of a bifurcated trial, that prospect seems much less likely: the prejudice to Mack in a felon-in-possession trial of evidence that he possessed the gun as a felon on other dates appears to be minor and not unfair.

fit into the existing schedule for the trial as a whole. I agree with the Government that there is a genuine cost to requiring jurors who have just finished the arduous task of deliberating over murder charges to hear additional evidence and then deliberate again. But I find that the prejudice described above outweighs that cost. Finally, I am skeptical that it will be necessary for the Government during the second phase to re-present evidence from the first phase to prove the possession element. Fresh from deliberations on Counts One through Four, the jury will still have all the trial evidence from the first phase in mind, and should be able to apply the Court's instructions on the felon-in-possession charges to that evidence to reach a second verdict. That said, I am not at this time foreclosing the Government from presenting additional evidence on possession during the second phase, should it be necessary to do so.

Because the prejudice from trying all counts jointly outweighs the judicial economy benefits of doing so, Mack has made the requisite showing of "substantial prejudice." *Walker*, 142 F.3d at 110. I therefore grant Defendant's motion to bifurcate the trial of Counts Thirteen and Fourteen from the trial on Counts One through Four.

Accordingly, during the first phase of the trial, counsel may not mention before the jury or introduce evidence that Mack is a convicted felon or has felony convictions. As discussed on the record today at the pretrial conference, however, the Court will, in its opening instructions, inform the jury that the trial will include a second phase at which the jurors will be asked to decide whether Mack unlawfully possessed a firearm on certain dates.

**SO ORDERED** this 4th day of April, 2016, at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge

9