## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:13-cr-00054 (MPS) |
| | : | |
| v. | : | |
| | : | |
| DOMINIQUE MACK, | : | |
| | : | |
| Defendant. | : | |

_____

## RULING ON DEFENDANT MACK'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

On April 27, 2016, after a bifurcated trial, a jury found Defendant Dominque Mack guilty

on Counts One and Four (conspiracy to commit witness tampering) and Counts 13 and 14

(unlawful possession of firearm offenses) of the revised second superseding indictment (the

"Indictment"). The jury found Mack not guilty on Counts Two and Three (witness tampering) of

the Indictment. (ECF Nos. 344-45.) On June 20, 2016, Mack filed a motion for judgment of

acquittal under Rule 29 or, in the alternative, a new trial under Rule 33 of the Federal Rules of

Criminal Procedure. (ECF No. 367.) The Government filed a brief opposing the motion. (ECF

No. 374.) For the reasons set forth below, the Court denies the motion.

## I.    BACKGROUND

The Indictment (ECF No. 299-1) charges Mack with six counts:

- Count One charges that from November 1, 2010, to January 15, 2011, Mack conspired with others to murder Ian Francis to prevent Mack's attendance in an official proceeding (as charged in Count Two) or to prevent the communication by Ian Francis or Breann Wynter to a law enforcement officer or judge of information relating to a federal offense, namely, narcotics trafficking (as charged in Count Three), in violation of 18 U.S.C. § 1512(k);

- Count Two charges that on December 21, 2010, Mack and others knowingly and intentionally caused the death of Francis to prevent Mack's attendance in an official

proceeding, namely, Mack's arrest and appearance in this Court, in violation of 18 U.S.C. §§ 1512(a)(1)(A) and 2;

- Count Three charges that on December 21, 2010, Mack and others knowingly and intentionally caused the death of Francis with the intent to prevent Francis and/or Wynter from communicating with a law enforcement officer or judge about information relating to the commission or possible commission of a Federal offense, namely, narcotics trafficking, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 2;

- Count Four charges that from March 2014 to March 2015, Mack conspired with others to murder Charles Jernigan to prevent the attendance of Jernigan in an official proceeding, namely, Mack's criminal trial, and to prevent the communication by Jernigan to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense, in violation of 18 U.S.C. § 1512(k);

- Count 13 charges that on or about December 21, 2010, Mack, a convicted felon, unlawfully possessed a firearm in or affecting commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and

- Count 14 charges that on or about June 15, 2011, Mack, a convicted felon, unlawfully possessed a firearm in or affecting commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## II.   LEGAL STANDARDS

### A.  Rule 29(c) Motion for Judgment of Acquittal

In considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government. All permissible inferences must be drawn in the government's favor. . . . [T]he Court must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.

*United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (internal citations and quotation marks omitted). In order for a court to deny a motion for judgment of acquittal under Rule 29(c), "[a] reasonable mind must be able to conclude guilt on each and every element of the charged offense." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (citation omitted).

### B.  Rule 33 Motion for a New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This rule "gives the trial court broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (internal quotation marks omitted). "When considering a motion for a new trial under Rule 33, a district court has discretion to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Truman*, 688 F.3d 129, 141 (2d Cir. 2012) (internal quotation marks omitted). However, "the court may not wholly usurp the jury's role." *United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005) (internal quotation marks omitted).

> Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. An example of exceptional circumstances is where testimony is patently incredible or defies physical realities . . . . The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted.

*Ferguson*, 246 F.3d at 134 (internal quotation marks and citations omitted).

### III.    DISCUSSION

### A.  Rule 29(c) Motion for Judgment of Acquittal

####    1.  Count One

In Count One, Mack was charged with conspiracy to tamper with a witness under 18 U.S.C. § 1512(k). The alleged objectives of the conspiracy were as follows: knowingly and intentionally to cause Francis's death with the intent to prevent (1) the attendance of Mack in an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A) and 2, and (2) the communication

by Francis or Wynter to a law enforcement officer or judge of the United States of information

relating to the commission or possible commission of a Federal offense in violation of 18 U.S.C.

§ 1512(a)(1)(C) and 2. (*See* ECF No. 299-1; *see also* Court's Jury Instructions, ECF No. 337 at

37, 41.) Mack argues that the Government introduced no evidence that the objectives of the

conspiracy to murder Francis were either (1) to prevent Mack from attending any official

proceeding or (2) to prevent Francis or Wynter from communicating information to a law

enforcement officer about the commission of narcotics trafficking. (ECF No. 367-1 at 5.)

    *a.   Attendance in an Official Proceeding -- 18 U.S.C. § 1512(a)(1)(A)*

Mack argues that 18 U.S.C. § 1512(a)(1)(A) "is designed to forbid murders intended [to]

prevent or discourage witnesses or others from appearing in court for court proceedings." (ECF

No. 367-1.) Further, Mack argues that even if the evidence at trial established that the purpose of

Francis's murder was to prevent Mack from being arrested on underlying narcotics trafficking

charges, Mack's arrest "is very different from preventing [him] from attending any court

proceeding he wished to attend." (*Id.*) Mack cites no authority in support of this argument.

In the case of a killing, Section 1512(a)(1)(A) of Title 18 of the United States Code

imposes the penalties applicable to murder and manslaughter on "[w]hoever kills or attempts to

kill another person, with intent to—*(A) prevent the attendance or testimony of any person in an*

*official proceeding*." 18 U.S.C. § 1512(a) (emphasis added). Section 1512(k) imposes the same

penalties on anyone who conspires to commit this offense. The elements of a violation of 18

U.S.C. § 1512(a)(1)(A) are that the defendant: (1) kills or attempts to kill *another* person (2) with

intent to prevent the attendance or testimony of *any* person (3) in an official proceeding. An

"official proceeding" includes "a proceeding before a judge or court of the United States . . . or a

Federal grand jury." 18 U.S.C. § 1515(a)(1)(A) (emphasis added).

"Statutory construction . . . begin[s] with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (internal citations and quotation marks omitted). Statutes should be read "to give effect, if possible, to every clause and word of a statute." *Id*. (internal quotation marks omitted). Only when the text of the statute is not clear should the court "consult the legislative history to discern the legislative purpose as revealed by the history of the statute." *Id*. (internal quotation marks omitted). "When the language of the statute is clear and does not contradict a clearly expressed legislative intent," the Court's "inquiry is complete and the language controls." *United States v. Kinzler*, 55 F.3d 70, 72 (2d Cir. 1995).

According to the plain language of the statute, the Government must prove that Mack acted with the intent to prevent "*any* person" from attending an official proceeding. That choice of words plainly embraces not only the person killed (or attempted to be killed) but also the defendant himself. *See United States v. Risken*, 788 F.2d 1361, 1368 (8th Cir. 1986) (comparing § 1512 to an older version of § 1503, and noting that "§ 1512 is not restricted to witnesses but protects 'any person' involved in an official proceeding."). If Congress had meant to reach only acts aimed at preventing witnesses or persons other than the defendant himself from attending court proceedings, it could have used a phrase such as "any other person" or "another person," as it did in several other places in Section 1512. *See*, *e.g.*, 18 U.S.C. § 1512(d) (making it a crime to "intentionally harass[] *another* person and thereby hinder[], delay[], prevent[], or dissuade[] *any* person from (1) attending or testifying in an official proceeding . . . [or] (3) arresting or seeking the arrest of *another* person in connection with a Federal offense"). But Congress chose "any

5

person"—apparently to give this provision broad scope. Thus, the plain language of the statute forecloses Mack's suggestion that the statute applies only to acts aimed at preventing witnesses from attending official proceedings.

Mack's effort to distinguish between his arrest and his attendance in an official proceeding fares no better. The jury could reasonably have found the following beyond a reasonable doubt from the evidence at trial: (1) in the summer and fall of 2010, Mack knew that he had been indicted on narcotics trafficking charges and was wanted by the FBI, (2) Mack feared that Francis, either through his girlfriend, Wynter, or on his own, would provide information to the FBI to help Wynter obtain a lighter sentence, and (3) he conspired to kill Francis in an effort to avoid arrest. Mack's arrest, of course, would necessarily have entailed a presentment and arraignment before a federal judge, both of which meet the definition of an "official proceeding." Indeed, the jury was so instructed:

> [T]he government must also prove beyond a reasonable doubt that the defendant killed Ian Francis with the intent to prevent the attendance of Mr. Mack in an official proceeding. More particularly, it is alleged that Ian Francis was killed to prevent the arrest of Mr. Mack, which would have been followed by Mr. Mack's presentment, arraignment, and trial in United States District Court.
> An official proceeding means a proceeding before a federal court, federal judge or federal agency. The proceeding may be civil or criminal. You are instructed that a federal criminal presentment, arraignment, and trial are all official proceedings.
> The law does not require that the official proceeding be pending at the time of the killing as long as the proceeding was foreseeable such that the defendant knew that his actions were likely to affect the proceeding. In addition, the government does not have to prove that the defendant knew that the proceeding would be in federal court.

(ECF No. 337 at 31.)[1] As the Court recalls, Mack did not object to these instructions, but

---

[1] Mack has not moved for a new trial on the basis of this or any other instruction given by the Court. But even if he had, the Court would deny a motion for a new trial based on a challenge to this instruction, which still appears to the Court to be legally correct. Finally, during the trial the

6

even if he did, a reasonable juror who followed them could have found that

Mack conspired to kill Francis with the intent to prevent his arrest and, therefore, his

attendance in an official proceeding.

        *b.   Information to Law Enforcement Officer Concerning the Commission
of a Federal Offense – 18 U.S.C. § 1512(a)(1)(C)*

    Mack also argues that "[t]he government introduced no evidence that [Francis] or . . .

Wynter had any intent to provide information to any law enforcement officer concerning the

commission of the federal offense of narcotics trafficking." (ECF No. 367 at 5.) Mack argues

that the evidence, viewed in the light most favorable to the Government, at most shows that

Mack was aware that Wynter and Francis intended to tell law enforcement officials Mack's

location so that the officials could arrest Mack on an outstanding federal warrant. (*Id.*) Mack

argues that "[t]elling federal officers where someone is located is very different from providing

information about narcotics trafficking, and the government introduced no evidence that the

decedent or Wynter had any information or intended to provide any information about Mr. Mack

and narcotics trafficking." (*Id.*)

    In the case of a killing, section 1512(a)(1)(C) of Title 18 of the United States Code

imposes the penalties applicable to murder and manslaughter on "[w]hoever kills or attempts to

kill another person, with intent to—*(C) prevent the communication by any person to a law*

*enforcement officer or judge of the United States of information relating to the commission or*

*possible commission of a Federal offense or a violation of conditions of probation, parole, or*

*release pending judicial proceedings.*" 18 U.S.C. § 1512(a) (emphasis added). Section 1512(k)

─────────────────────

defense repeatedly placed before the jury Mack's history as a drug dealer—from which a
reasonable juror could have inferred that he was familiar with the criminal justice system and,
specifically, that he knew that his arrest would entail his attendance at an official proceeding.

imposes the same penalties on anyone who conspires to commit this offense. The elements of a violation of 18 U.S.C. § 1512(a)(1)(C) are that the defendant: (1) kills or attempts to kill *another* person; (2) with intent to prevent the communication by *any* person; (3) to a law enforcement officer or judge of the United States; (4) of information relating to the commission or possible commission of a Federal offense. 18 U.S.C. § 1515(a)(1)(C). A "law enforcement officer" includes an "officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant--(A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense." 18 U.S.C. § 1515(a)(4),

According to the plain language of 18 U.S.C. § 1512(a)(1)(C), the Government must prove that Mack acted with the intent to prevent the communication by *any* person to a law enforcement officer of information relating to the commission or possible commission of a Federal offense—as charged in this case, narcotics trafficking. *See United States v. Rand*, 482 F.3d 943, 946 (7th Cir. 2007) ("The statute makes it a federal crime to kill or attempt to kill '*another person*'—regardless of who that person is—in order to prevent the communication of information by *'any person'* to the court. The statute does not only provide that it is a federal crime to kill another person in order to prevent *that* person from communicating information to the court."). "Any knowing interference with a potential communication between an individual who might become a witness and federal law enforcement officials falls within the ambit of Section 1512." *United States v. Romero*, 54 F.3d 56, 62 (2d Cir. 1995). Observing that "the statute is directed at the 'intent to prevent . . . communication' with federal authorities," the Second Circuit has held that:

> [t]he government need prove only an intent to kill for the purpose of interfering with communication with federal law enforcement officials. The victim need not

have agreed to cooperate with any federal authority or even to have evinced an
intention or desire to so cooperate. There need not be an ongoing investigation or
even any intent to investigate. Rather, the killing of an individual with the intent
to frustrate the individual's possible cooperation with federal authorities is
implicated by the statute.

*Id.*

A reasonable jury could have found that the evidence introduced at trial satisfied this standard. Specifically, it could have found that, just before Francis's shooting: (1) Mack knew that he had been indicted in a drug conspiracy and was wanted by federal officials; (2) most of the other defendants charged in the indictment had already been arrested, including Wynter; (3) federal officials interviewed Wynter and told her that she could possibly obtain a shorter sentence by providing them with information about the whereabouts of other defendants named in the indictment, including Mack; (4) Mack knew that Wynter was romantically involved with Francis; (5) Wynter discussed with Francis a plan in which Wynter would give federal agents information about Mack's location, and in exchange for Mack's consent to the plan, Wynter would put money in Mack's commissary account (the "Plan"); (6) Francis approached Mack about the Plan on two occasions; (7) Mack was noncommittal about the Plan during his discussions with Francis; and (8) Mack was aware that Wynter was talking to federal officials, that Francis wanted to help her avoid a prison sentence, and that Francis knew Mack's location. If the Plan had proceeded, federal officials would have arrested Mack under the narcotics indictment that named him and others. A reasonable juror could also have inferred from the evidence that Mack was hiding from law enforcement and did not want to be arrested, and that after Francis approached Mack about the Plan, Mack viewed Francis as a potential witness or snitch.[2] Thus, the jury could reasonably have found that Mack conspired to kill Francis with the

---

[2] There was evidence that Mack asked Francis at one point if Francis was "snitching."

intent to prevent him and/or Wynter—both of whom, the evidence suggested, he viewed as potential cooperators—from communicating with law enforcement about him, his location, and any details they might have about his narcotics activities. Although the defense argues that there was no evidence that Francis or Wynter actually intended to provide information to law enforcement about Mack's narcotics activities per se, the relevant intent is Mack's, not Francis's or Wynter's. And a reasonable juror could have inferred that Mack was concerned that, in cooperating with the Government, Wynter and/or Francis might share information about his narcotics activities, as well as his location. Mack's question to Francis about "snitching" suggests that Mack might have feared the communications would not be limited to providing his street address. *See United States v. Romero*, 54 F.3d 56, 62 (2d Cir. 1995) (citing *United States v. Leisure*, 844 F.2d 1347, 1364 (8th Cir. 1988) ("*it is only necessary for a defendant to have believed that a witness might give information to federal officials*, and to have prevented this communication, to violate 18 U.S.C. § 1510 [a related statute that criminalizes obstructing, delaying, or hindering communications of informants relating to a violation of any criminal statute to a criminal investigator].")) (emphasis added).

Moreover, in this context, the Defendant's attempt to distinguish between providing information about Mack's location and providing information about narcotics trafficking is unconvincing. Phrased in the language of the statute, the Defendant's argument appears to be that providing information about Mack's location does not amount to "the communication . . . of information relating to the commission or possible commission of a Federal offense . . . ." 18 U.S.C. § 1512(a)(1)(C). The Defendant's cramped reading of this provision belies the broad scope of the words chosen by Congress. The information need merely "relat[e] to the commission or possible commission" of a federal crime. Courts have given broad sweep to the

phrase "relating to." *See*, *e.g., Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (in case involving preemptive effect of Airline Deregulation Act, stating, "For purposes of the present case, the key phrase, obviously, is 'relating to.' The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,'—and the words thus express a broad pre-emptive purpose.") (citing Black's Law Dictionary 1158 (5th ed. 1979)); *Richards v. Ashcroft*, 400 F.3d 125, 129-30 (2d Cir. 2005) ("Even if possession of a forged instrument with intent to defraud, deceive or injure is not 'forgery' as defined at common law, it is unarguably an offense 'relating to' forgery within the broad construction we have given that term."). The addition of the phrase "possible commission of a Federal offense" further enlarges the category of communications covered, and forecloses any argument that the statute's coverage depends on whether a crime was actually committed. It does not stretch the ordinary meaning of the words in the statute to conclude that the location of a person charged with a federal offense who has been hiding from law enforcement since the return of the indictment is information "relating to the commission of a Federal offense."

Such an interpretation of the statute finds further support in the law of evidence of consciousness of guilt. Mack's location cannot be separated from the fact that he remained in hiding and sought to avoid arrest (or so the jury could have inferred), which, the evidence suggested, Wynter and Francis also knew and could disclose to federal law enforcement officers. Evidence of Mack's location, together with evidence of his efforts to hide and avoid arrest, would likely have been admissible in a trial on the underlying narcotics charge as evidence of consciousness of guilt, which is another way of saying that information about his location would likely have been relevant to (a stricter standard than "relating to") a determination of whether he

had committed a federal offense. *See United States v. Juliao*, No. S 89 CR. 20 (JFK), 1990 WL

250178, at *2 (S.D.N.Y. Dec. 26, 1990) ("Evidence of flight is admissible to show consciousness

of guilt."); *United States v. Martinez*, 190 F.3d 673, 678 (5th Cir. 1999) (upholding

consciousness-of-guilt-from-flight instruction where defendant hid in closet when police arrived,

and rejecting defendant's argument that hiding did not amount to flight: "Although hiding in a

closet may not be the standard method of escape, it still can constitute flight where, as in this

case, the cornered defendant was attempting to elude capture."). Even under evidentiary rules of

relevance, then, Mack's location was information "relating to" the commission of a federal

offense. In other contexts, as well, the federal criminal law treats efforts to hide or flee following

an offense as conduct "relating to" the commission of the offense. *See, e.g.*, U.S.S.G. § 1B1.3

(defining "relevant conduct" under the Guidelines to include "all acts and omissions committed,

aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . .

. . that occurred during the commission of the offense of conviction, in preparation for that

offense, *or in the course of attempting to avoid detection or responsibility for that offense*.")

(emphasis added). Thus, even without considering whether Mack feared that Francis or Wynter

might disclose information about his narcotics activities per se, the jury reasonably could have

found that the provision of information about Mack's location amounted to the provision of

information "relating to the commission or possible commission of a Federal offense."

### 2.  Count Four

Count Four charges that Mack conspired with Tyquan Lucien to murder Jernigan (1) to

prevent the attendance of Jernigan in an official proceeding, namely, Mack's criminal trial, and

(2) to prevent the communication by Jernigan to a law enforcement officer or judge of the United

States of information relating to the commission or possible commission of a Federal offense, in

violation of 18 U.S.C. § 1512(k). Mack argues that the evidence at trial was not sufficient to establish that he was involved in any conspiracy to kill Jernigan, and established only that Lucien was acting on his own in plotting to kill Jernigan. (ECF No. 367-1 at 8.)

If the jury credited Lucien's testimony—which it was free to do, *see United States v. Truman*, 688 F.3d 129, 140 (2d Cir. 2012) (assessing a witness credibility is "the province of a jury properly instructed"; Rule 29 "does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.") (internal quotation marks omitted)—it could have reasonably found that Lucien spoke with Mack during joint visits at the detention facility arranged by Mack's mother. Further, it could reasonably have found that during those visits, Mack informed Lucien he anticipated that Jernigan would provide incriminating information to federal agents and that Mack wanted Jernigan dead. Among other evidence, the jury heard recordings by Lucien's cellmate on which Lucien can be heard saying that Mack wanted "CJ gone," a statement the jury reasonably could have found reflected something Mack told Lucien during the portions of the joint visits not captured by the visiting room phones at the detention facility. This evidence, taken together with Lucien's testimony, was sufficient to sustain Mack's conviction on Count Four. Indeed, Lucien's testimony alone was sufficient. *See Truman*, 688 F.3d at 139 ("[T]he testimony of a single accomplice witness is sufficient to sustain a conviction, provided it is not incredible on its face, or does not defy physical realities.") (internal citations and quotation marks omitted).

### 3.  Counts 13 and 14

Although Mack's motion seeks judgment of acquittal on each of the four counts of conviction, his memorandum sets forth arguments in support of acquittal only on Counts One

and Four. In any event, the evidence at trial was sufficient to support the jury's verdict as to

Counts 13 and 14 as well, including, for example, Lucien's testimony that Mack possessed the

murder weapon at a meeting at Jernigan's house on the day of Francis's murder, and the

undisputed evidence that on the date of his arrest Mack was found alone in an apartment where

the murder weapon was also found.

### B.   Rule 33 Motion for a New Trial

#### 1.   Francis's Out-of-Court Statements - Fed. R. Evid. 804(b)(6)

Mack argues that the Government failed to establish that Mack murdered Francis or

acquiesced in his murder intending to cause his unavailability as a witness and thus that the

Court erred by admitting Francis's out-of-court statements under Rule 804(b)(6) of the Federal

Rules of Evidence. Because Mack does not offer new evidence or legal authority in support of

this argument, and because none of the evidence introduced at trial leads the Court to question its

earlier ruling on the issue, the Court denies Mack's motion for the same reasons set forth in its

detailed Ruling on Defendant Mack's Motion in Limine to Exclude Statements of Ian Francis.

(ECF No. 307.)

#### 2.   Miller's Statements to Farmer - Fed. R. Evid. 804(b)(3)

Mack argues that the Court erred in admitting Brandyn Farmer's testimony concerning

certain statements Miller made to Farmer. On December 4, 2014, Miller, who was once Mack's

co-defendant, pled guilty to witness tampering - second degree murder in connection with the

murder of Francis. (ECF Nos. 162, 163.) After finding that Miller was unavailable to testify at

Mack's trial, the Court permitted Farmer to testify to certain statements by Miller based on a

finding that those statements were against Miller's penal interest when made and satisfied the

requirements for admissibility under Fed. R. Evid. 804(b)(3).

Rule 804(b)(3) states that certain statements are "not excluded by the rule against hearsay if the declarant is unavailable as a witness" including a statement that "(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."

Fed. R. Evid. 804(b)(3).

On April 15, 2016, the Court issued an oral ruling stating that the following statements—should Farmer testify that Miller made them—would be admissible:

- A statement by Miller that Miller planned to drive with Francis to Sigourney Street so that Mack could shoot Francis;

- A statement by Miller that Miller actually did drive with Francis to Sigourney Street on the night of December 21, 2010;

- A statement by Miller that after he and Francis arrived in Francis's car on Sigourney Street, Miller got out of the car to urinate and then saw Mack shoot Francis; and

- A statement by Miller that he did this for two reasons, and one of those reasons was that he, Miller, had received a gun from Francis and did not want to return it or had sold it and that Francis was harassing him about returning it.

The Court found that Miller's statement that a second reason for his participation in the murder was that Mack was angry about the Plan or did not want to appear in an official proceeding was not admissible because such a statement by itself did not tend to expose Miller to criminal liability.

Mack argues that (1) the Government did not adequately establish Miller's unavailability; (2) Miller's statements concerning Mack, if he said them, were not contrary to Miller's interests

in the context they were made; and (3) Farmer's testimony and Miller's statements contained

insufficient particularized guarantees of trustworthiness. (ECF No. 367-1 at 11-12.)

I addressed these arguments in my April 15 ruling, and nothing in Mack's motion

persuades me to depart from that ruling. First, Miller was unavailable. Having pled guilty to

charges relating to his involvement in Francis's death, Miller was awaiting sentencing at the time

of Mack's trial. Miller's plea agreement, which was binding on the Court under Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure, stated that "[s]hould the defendant testify at any trial

or other court proceeding . . . about the subject matter which forms the basis of the superseding

indictment in this case, and provide testimony inconsistent with or in addition to the facts

proffered and agreed to by the defendant as part of the plea colloquy," he would violate the

agreement and the agreed upon sentencing range would no longer be binding on the Court. (Plea

Agreement, ECF No. 163 at 5.) In part because of this provision, Miller's attorney represented to

the Court—during a June 9, 2015 hearing on whether the Court should accept Miller's plea

agreement—that he had advised Miller to "take the Fifth" if called to testify in Mack's trial and

that Miller had indicated to his attorney that he would heed that advice. (ECF No. 383,

Transcript of Hearing at 10.)[3] "It is well settled that when a witness invokes [his] Fifth

Amendment rights, the witness is 'unavailable' as defined by Rule 804(a)(1). A witness need not

be physically brought into court to assert the privilege." *United States v. Chan*, 184 F. Supp. 2d

337, 341 (S.D.N.Y. 2002) (internal citations omitted) (government's representation that lawyers

for witness stated that their client would assert the Fifth Amendment privilege is sufficient to

find unavailability); *see United States v. Williams*, 927 F.2d 95, 99 (2d Cir. 1991) (concluding

---

[3] It is the Court's recollection that Miller's counsel made the same representation to the Court
when Miller initially appeared to enter his guilty plea on December 2, 2014.

that court "acted reasonably and in good faith" in believing "representations of the attorneys for the incarcerated defendants concerning their clients' intentions to rely on their Fifth Amendment privileges" and finding that the incarcerated defendants were unavailable). Thus, because Miller expressed, through his counsel, his intent to exercise his Fifth Amendment rights if called to testify at Mack's trial, Miller was unavailable for purposes of Rule 804.

Second, the surrounding circumstances show that Miller's statements concerning Mack that the Court found admissible were contrary to Miller's penal interests when they were made. Only statements that are "truly self-inculpatory" are admissible. *Williamson v. United States*, 512 U.S. 594, 603, 114 S. Ct. 2431, 2436, 129 L. Ed. 2d 476 (1994). "[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context." *Williamson*, 512 U.S. at 603. "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true, and this question can only be answered in light of all the surrounding circumstances." *Id.* at 603–04 (internal quotation marks omitted).

As the Court explained in its April 15 oral ruling, each of the statements the Court identified were against Miller's penal interests when they were made. The statement that Miller planned to drive with Francis to Sigourney Street so that Mack could shoot Francis inculpates both Miller and Mack in a conspiracy to murder Francis. *See United States v. Saget,* 377 F.3d 223, 231 (2d Cir.2004) ("district court correctly determined, after an adequately particularized analysis, that the bulk of [unavailable co-conspirator's] statements were self-inculpatory because they described acts that [defendant] and [co-conspirator] committed jointly."). The statement that Miller actually did drive with Francis to Sigourney Street on the night of December 21, 2010, is

against Miller's penal interest because it shows that Miller took steps to carry out his role in the conspiracy to murder Francis. And, as explained in the April 15 ruling, Miller's statement that after he and Francis arrived in Francis's car on Sigourney Street, Miller got out of the car to urinate and then saw Mack shoot Francis was admissible—as long as it was elicited after or together with Miller's statement that he drove with Francis to Sigourney Street so that Mack could shoot Francis. This statement incriminates Miller because it shows that he and Mack actually carried out their conspiracy and that the conspiracy—not some other unrelated event— actually caused Francis's death. (In other words, if Miller had said, instead, that some third party who was not part of the conspiracy had actually pulled the trigger, then the statement would not be against Miller's penal interests, because it would mean that the conspiracy he entered into did not actually cause Francis's death.) Finally, Miller's statement that he participated in the conspiracy to kill Francis for two reasons, and one of those reasons was that he had received a gun from Francis and did not want to return it inculpates Miller because it explains his motive for participating in the conspiracy. Miller volunteered all of these statements to Farmer, who was his friend. (Farmer testified that he brought Miller to Francis's funeral.) Miller was not in police custody when he made the statements, and the statements were not made to anyone in law enforcement. Therefore, the Court adheres to its ruling that the context of these statements shows that Miller "was not attempting to minimize his own culpability, shift blame . . . or curry favor with authorities." *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007). The context of Miller's statements also suggests that Miller was not attempting to minimize his role in the crime; rather, he was describing the conspiracy and the events as they occurred. Therefore, the statements were against Miller's penal interest.

Third, Miller's statements contained corroborating circumstances of trustworthiness. The Court must "determine whether there are corroborating circumstances indicating both the declarant's trustworthiness and the truth of the statement." *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (internal quotation marks omitted).[4] A "statement incriminating both the declarant and the defendant may possess adequate reliability if . . . the statement was made to a person whom the declarant believes is an ally, and the circumstances indicate that those portions of the statement that inculpate the defendant are no less reliable than the self-inculpatory parts of the statement." *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (citation omitted). Again, Miller voluntarily made the statements to Farmer, a friend. "The statements were not made to law enforcement authorities, were not made in response to questioning, and were not made in a coercive atmosphere." *United States v. Matthews*, 20 F.3d 538, 546 (2d Cir. 1994). Miller had no reason to tell Farmer that he conspired to kill Francis and participated in the killing unless it was true.

The statements the Court identified as being admissible were corroborated by, among other things, evidence given by Anthony Brinson, Francis's nephew, and Miller's plea agreement and colloquy. The Government introduced a statement from Brinson that Francis had told Brinson that he and Miller argued in the car over a gun that Francis had lent Miller and Miller had refused to return.[5] According to Brinson's account of what Francis told him, Miller told Francis to pull over on Sigourney Street so that Miller could urinate. Francis also told Brinson

---

[4] As the Court stated in its April 15, 2016 oral ruling, the Court does not need to consider the credibility of Farmer, who related the statements at trial, because he was available for cross-examination.

[5] The evidence at trial showed that Francis survived in the hospital for three weeks after the shooting before succumbing to his wounds.

that Miller got out of the car, walked by a masked man—and made eye contact with him—before

the masked man began shooting into Francis's vehicle. Miller's plea agreement was consistent

with this account, stating that "[o]n December 27, 2010 . . . [Miller] knowingly and intentionally

aided and abetted in the murder of Ian Francis by enticing Ian Francis to a location in Hartford

where Ian Francis was shot and killed. The defendant did so, at least in part, knowing and

intending that another person or persons who the defendant assisted wanted to prevent a person

from communicating with federal law enforcement and/or to prevent the attendance of a person

at an official federal proceeding. The defendant acted consciously and with reckless and wanton

conduct such that the defendant was aware of the serious risk of death to Ian Francis." (Plea

Agreement, ECF No. 163 at 9.)[6] The statement about Miller observing Mack doing the shooting

also is corroborated by evidence that, when Mack was arrested, he was found alone in an

apartment and the murder weapon was found in one of the rooms in the apartment at the time of

his arrest.

### 3.  Lucien's Prior Consistent Statements - Fed. R. Evid. 801(d)(1)(B)

Mack argues that the Court erred in admitting prior consistent statements of government

witnesses. Under Rule 801(d)(1)(B) of the Federal Rules of Evidence, a prior statement is not

hearsay if the declarant testifies and is subject to cross examination about the statement, the

statement is consistent with the declarant's testimony, and the statement is offered either "(i) to

rebut an express or implied charge that the declarant recently fabricated it or acted from a recent

improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a

---

[6] In deciding a preliminary question about whether evidence is admissible, the Court is not bound by the Rules of Evidence. *See* Fed. R. Evid. 104(a). Although Miller's statement in the plea agreement (which was echoed in the plea colloquy) does not specifically identify Mack, it is consistent with the statements Miller made to Farmer and strongly suggests that the "person . . . who the defendant assisted" was none other than Mack.

witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B). The Advisory Committee notes explain that clause (ii) was added in 2014 to allow the admission as substantive evidence of prior consistent statements that are offered to rehabilitate a declarant's credibility as a witness when attacked on another ground besides recent fabrication, improper influence, or improper motive, such as charges of inconsistency or faulty memory. *Id.*, Advisory Committee Notes, 2014 Amendments.

The only prior statement Mack specifically challenges is a recorded statement in which Lucien told his cellmate, "Big Mack. He want CJ gone." Unbeknownst to Lucien when he made the statement, his cellmate was cooperating with the government and wearing a government-supplied recording device. Mack argues that because Lucien hated Mack, he attempted to pin blame on Mack for the murder of Francis and the plan to murder Jernigan. Therefore, Mack's argues, Lucien's statement implicating Mack in planning Jernigan's murder was not made prior to the existence of the improper influence or motive because, at least since Francis's murder, Lucien "had been attempting to place the blame for his misdeeds on Mack" and the statement "was of a piece with other similar statements [Lucien] had made to just about anyone who would listen to him." (ECF No. 367-1 at 13-14.)

Lucien's statement was admissible under both Fed. R. Evid. 801(d)(1)(B)(i) and (ii). While cross-examining Lucien, Mack's defense counsel pursued the theory that Lucien was falsely implicating Mack in the conspiracy to kill Jernigan to obtain a lesser sentence by cooperating with the Government. Mack's defense counsel emphasized that Lucien was aware that if the Government did not find that Lucien provided substantial assistance, he would face a mandatory sentence of life in prison. Thus, Mack's defense counsel suggested that Lucien had an additional, significant motive to lie: to blame Mack for the plan to murder Jernigan in order to

curry favor with the Government and obtain a lesser sentence for that crime. "The Rule permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive." *Tome v. United States*, 513 U.S. 150, 167, 115 S. Ct. 696, 705, 130 L. Ed. 2d 574 (1995). Lucien made the statement to his cellmate implicating Mack before he was charged with conspiring to kill Jernigan, before he pled guilty and agreed to cooperate with the Government against Mack, and before he had any reason to believe that he would plead guilty or cooperate with the Government. At the time he made the statement to his cellmate, Lucien had been arrested for making false statements about the Francis murder (including denying that he knew Mack and others associated with the case), and there is no evidence that he had shown any interest in cooperating with the Government at that time. Moreover, he did not face nearly the same level of possible prison time on the false statements charge as he would later face after being indicted for the conspiracy to murder Jernigan in Count Four. When Lucien told his cellmate that Mack "want CJ gone," he had no motive to lie on account of cooperation with the Government. Because Lucien made the statement before that motive to lie arose, it is admissible under Fed.R. Evid. 801(d)(1)(B)(i) "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper . . . motive in . . . testifying" that Mack wanted Jernigan dead. *See United States v. Caracappa*, 614 F.3d 30, 40 (2d Cir. 2010) (finding "no error in the district court's findings that defendants had expressly or impliedly suggested that [witness's] testimony was fabricated because of his desire to get out of prison," nor in finding that the statement, "made while [witness] was on the lam and some two years before he was arrested, was made before [witness] had a motive to fabricate."); *United States v. Guerino*, 607 F. App'x 117, 118 (2d Cir. 2015) (finding "no error in the

conclusion that the statements at issue were made before the alleged motive to fabricate arose and that they were therefore admissible to rebut defendant's assertion that the cooperating witnesses falsely implicated defendant . . . in order to secure more lenient treatment from the government in their own cases"); *see also Mason v. United States*, 53 A.3d 1084, 1092 (D.C. 2012) ("prior consistent statement was admissible to rebut a charge of a very recent and different reason to fabricate . . . . that [witness] had a current reason to curry favor with the government notwithstanding that the witness also had other, unrelated motives to lie at the time the statement was made," and "the jury was well aware of those other motives, and thus able to weigh the prior consistent statement accordingly.").

The second clause of Rule 801(d)(1)(B) allows the admission of a prior consistent statement "to rehabilitate the declarant's credibility as a witness when attacked on another ground." As the Government points out, Mack attacked Lucien's credibility on other grounds, including implying that there were inconsistencies between Lucien's testimony and his statements to federal investigators. As noted above, in interviews with investigators and before the Grand Jury, Lucien initially denied knowing people that he later admitted he knew during his testimony. Therefore, as the Court ruled, the statement is also admissible under Fed. R. Evid. 801(d)(1)(B)(ii).

The Court adheres to its ruling regarding prior consistent statements and denies Mack's motion for a new trial on this ground.

### 4. Counts 13 and 14

Mack argues that the Court should also order a new trial on Counts 13 and 14 because of prejudicial spillover, although he provides no specific analysis for this claim. The Court finds this claim lacks merit in any event. At the defense's request, and based largely on the defense's

argument that a joint trial that included Counts 13 and 14 would risk prejudicial spillover, the Court bifurcated the trial and tried Counts 13 and 14 separately from the other counts. The Court also gave instructions designed to ensure independent consideration by the jury as to each count. (*See* ECF No. 337 at 27; ECF No. 343 at 2.) The Court does not find any basis to order a new trial on this ground.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Mack's motion for judgment of acquittal or a new trial. (ECF No. 367.)

**SO ORDERED** this 15th day of August, 2016, at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge