UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOMINIQUE MACK,

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.

No. 3:22-cv-00800-MPS

## RULING ON MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE

Dominique Mack seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons set forth below, I DENY his motion.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

I assume familiarity with the record in this case and set forth below only a brief summary of the background and the claims. *See United States v. Dominique Mack*, D. Conn., Case No. 13-CR-00054-MPS; *United States v. Miller*, 954 F.3d 551 (2d Cir. 2020).

On March 18, 2015, a grand jury returned a second superseding indictment against Mack, charging, among other offenses, conspiracy to tamper with a witness causing the death of Ian Francis and conspiracy to tamper with a witness through a plan to murder Charles Jernigan. *Dominique Mack*, 13CR54, ECF No. 200. On April 27, 2016, a jury convicted Mack of both conspiracy counts, as well as two counts of unlawful possession of a firearm by a felon. *Id.* at ECF No. 431. Mack was sentenced to terms of mandatory life imprisonment on the two conspiracy counts and ten years each on the two firearm counts, all to run concurrently. *Id.*

On December 21, 2010, Mack arranged for Ian Francis to be shot multiple times in the North End of Hartford, because Mack was upset that Francis had offered to pay him to turn himself in on federal drug conspiracy charges in return for Francis's girlfriend's receiving credit

1

as a government cooperator with respect to the same charges. ECF No. 368 ¶¶ 6-7, 16. Mack later conspired to kill Charles Jernigan because he believed Jernigan was to be a witness in Mack's trial for Francis's murder. *Id.* at ECF No. 368 ¶ 31. Mack is currently confined at the United States Penitentiary in Canaan, Pennsylvania. Federal Bureau of Prisons, find an inmate, https://www.bop.gov/inmateloc/ (BOP# 20525-014; last visited June 13, 2024).

Mack appealed his conviction and sentence. The Court of Appeals affirmed the judgment, rejecting his claims. *See Miller*, 954 F.3d 551; *see also United States v. Miller*, 807 F. App'x 90, 93-97 (2d Cir. 2020) (summary order). On June 21, 2022, Mack, appearing *pro se*, sought collateral relief by filing a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1. On August 24, 2022, the Court granted Mack's motion to amend the petition to withdraw certain claims. ECF No. 5. On September 27, 2023, the Court granted Mack's second motion to amend the petition to add a claim that the Government had failed to satisfy its *Brady* obligations to disclose an FBI 302 form memorializing an interview with Laquan Jones. ECF No. 19.

As amended, Mack's 2255 motion makes the following claims. First, Mack claims that his lawyers rendered constitutionally ineffective assistance because they failed to investigate witnesses and present what he asserts is exculpatory testimony. More specifically, Mack contends that his lawyers failed to interview or present testimony from Laquan Jones, who Mack contends would have testified that (1) he was not at Charles Jernigan's house "at all" on December 21, 2010; (2) there was never a day when he, Mack and Jernigan agreed to murder Ian Francis; and (3) he did not see Tyquan Lucien on December 21, 2010. ECF No. 1 at 14 and 1-1 at 11. Mack believes that such testimony "could have affected the judgment of the jury," leading the jury to acquit him on the charge of the conspiracy to kill Francis. *Id.* Mack also argues that

2

his lawyers failed to investigate and present testimony from Lorenza Christian, which Mack asserts would have corroborated Laquan Jones's testimony. ECF No. 1 at 15. He adds that if his lawyers were aware of an FBI 302 memorializing an interview with Jones, they rendered ineffective assistance in declining to use it to confront the Government's cooperating witness, Tyquan Lucien. Second, Mack claims that the Government knowingly used false testimony (Tyquan Lucien's testimony) and committed a *Brady* violation if it failed to disclose the FBI 302 reflecting the Jones interview. *Id*.; ECF No. 25 at 2. Third, Mack claims that he is actually innocent of the two conspiracy charges. I address these claims below.

II.     **LEGAL STANDARDS**

   A.     **Section 2255 Petition**

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the Court which imposed the sentence to vacate, set aside or correct the sentence."). But a 2255 movant faces a steep uphill climb. He must show that "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979)(internal quotation marks omitted). Section "2255 review is narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018)(internal quotation marks omitted).

   B.     **Ineffective Assistance of Counsel**

3

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

*Strickland's* performance prong requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Where the alleged error is a failure to investigate, the "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments," and keeping in mind that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. Where the alleged error is the decision not to pursue a particular defense, it "does not constitute deficient performance if ... the lawyer has a reasonable justification for the decision." *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996). Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 588 (citing *Strickland*, 466 U.S. at 690). Courts are "especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005). "The decision not to call a particular trial witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess." *Id* (alteration omitted). Thus, counsel's decision "of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Schm*idt, 105 F.3d 82, 90 (2d Cir. 1997).

The prejudice prong requires Mack to establish that there is "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

III.   DISCUSSION

   A.   **Ineffective Assistance of Counsel**

   1.   **Failure to Interview or Present Testimony from Laquan Jones**

Mack claims his lawyers' representation fell below an objective standard of reasonableness because they "disregarded Mack's request [that they] meet with [Laquan] Jones" and failed to call Jones as a witness. Mack asserts that Jones's testimony would have "ma[de] it impossible for an agreement to be hatched at Jernigan's house regarding conspiracy to murder Francis[.]" ECF No. 1 at 14.   Mack has submitted a declaration from Jones stating that Jones met Mack and Lorenza Christian at Christian's house around 4:00 p.m. on December 21, 2010, and left after "a couple of hours" to "meet [a] girl" with whom he stayed "for the rest of the night." ECF No. 1-1 at 14. He adds that he did not see Mack again until a few days later. *Id*. Jones states that he would testify to these facts if called as a witness and that Mack's defense lawyers never interviewed him. ECF No. 1-1 at 14.

   Jones's proposed testimony does not, however, provide Mack with an alibi. Francis was shot around 8:20 p.m. on December 21, 2010 (ECF No. 465 at 78, 87), over two hours after Jones says that he left Christian's house ("a couple of hours" after 4:00 p.m.). ECF No. 1-1 at 14. If Jones left around 6:00pm and did not see Mack again for a few days, he would have no personal knowledge of Mack's whereabouts at the time of the shooting.   Finally, Jones's declaration does not address whether he saw Tyquan Lucien on December 21, 2010.

   Apart from the fact that Jones's declaration does not suggest that his testimony would have helped Mack at trial, Defense counsel's apparent decision not to call Jones as a witness was reasonable for another reason: Jones was highly vulnerable to impeachment.  First, Jones was Mack's cousin and, as the Government notes, there was some evidence at the trial suggesting he

5

himself was involved in the shooting of Francis. For example, the evidence indicated that Jones's and Mack's phones were in frequent communication around the time of the shooting and that the signals of both phones were, at that time, bouncing off the same cell tower, which was located only 350 yards from the site of the shooting. See ECF No. 9 at 6-7 (citing evidence in Joint Appendix); *see also* ECF No. 468 at 136-37, 141. Indeed, one of the theories Mack's counsel suggested to the jury was that Jones, Jernigan, and Lucien – but not Mack – had met to plot Francis's murder. *See* ECF No. 471 at 70-71. Second, Jones's FBI 302 statement suggests that he was willing to lie to help Mack and contradicts the Jones declaration that Mack has submitted with his petition. Jones told the FBI in an October 20, 2011 interview that, although he and Mack were cousins, he did not see Mack frequently, that he did not have a close relationship with Mack, and that he had not seen Mack since the Fall of 2009. ECF No. 9-1 at 2. This contradicts not only Jones's declaration but also the cell phone evidence at trial. Further, in the interview, Jones initially lied about having made three-way calls from prison (when he was incarcerated) and then admitted lying; first denied that his nickname was "forty" and later admitted it; and first described a deceased friend with the first name "Thompson" and later called him "Thomas." ECF No. 9-1 at 3. All of this made Jones highly vulnerable to impeachment and might have made him look as if he was trying to help both Mack and himself at trial by denying any knowledge related to the Francis murder. Because Jones likely would have made a poor witness for Mack, and could easily have hurt his case, defense counsel made a reasonable decision not to call him. In any event, Mack was not prejudiced because Jones's declaration does not help him and Jones's contradictory statements and admitted lying, as well as the evidence of his involvement in the Francis murder, seriously undermined his credibility.

### 2. Failure to Interview or Present Testimony from Lorenza Christian

6

Mack's claim that his lawyers should have interviewed and called Lorenza Christian to testify fares no better. Mack has submitted a declaration from Christian stating that he was not interviewed by defense counsel and that on the afternoon of December 21, 2010, he and Mack were at his residence on Niles Street in Hartford "listening to music and watching television." ECF No. 1-1 at 16. According to Christian, Laquan Jones arrived at 4:00 p.m., and Mack and Christian had "purchased liquor" to celebrate Jones's birthday, which was the following day. *Id*. Christian adds: "We drank at my residence and ended up getting intoxicated," a statement that contradicts Jones's statement in his declaration that "I only drank a little …."[1] Id. at 14. Christian's declaration also states that he "ended up falling asleep late that evening and when I woke up … Mack and … Jones had left." ECF No. 1-1 at 16. Christian's declaration does not specify the time he fell asleep, whether Mack or Jones was present when he fell asleep, or the time Mack or Jones left. So, this vague testimony would not have provided an alibi for Mack either. Further, to the extent it suggests that Jones and Mack were together with Christian "late that evening," it contradicts Jones's declaration, which says that Jones left around 6pm. It also runs up against the cell phone evidence showing that Mack's and Jones's phones were both near the site of the Francis shooting – located almost a mile from Christian's residence – that occurred later that evening. So, calling Christian as a witness would not have provided Mack with a solid alibi and would have undermined the account of Mack's other would-be witness, Jones. And, to the extent the Christian declaration could be read to suggest that Mack was at Christian's home until "late that evening" (it is unclear on this point), calling Christian would have risked exposing him to impeachment with the cell phone evidence. Under these circumstances, defense counsel's

---

[1] Both Christian's and Jones's level of intoxication is relevant because Mack is suggesting that defense counsel should have called them to testify about their perception of events on December 21, 2010, including the times at which they saw Mack that day.

7

decision not to call Christian was a reasonable strategic choice. Even if it wasn't, Mack was not prejudiced because Christian's proposed testimony is too vague to have helped him materially, i.e., it does not make the likelihood of a different result "substantial," as opposed to "just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

\*\*\*

Mack has not satisfied the first prong of *Strickland* and is therefore not entitled to habeas relief. But as shown, even if Mack's lawyers were unreasonable in not calling Jones or Christian, Mack's claim fails because he cannot establish prejudice.

### 1.  *Brady* Claim

"The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (internal quotation marks omitted; *citing Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the prosecution either willfully or inadvertently; and prejudice must have ensued." *United States v. Douglas*, 525 F.3d 225, 244–45 (2d. Cir. 2008) (alteration omitted). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different[.]" *Youngblood v. W. Virginia*, 547 U.S. 867, 870 (2006).

Mack claims the Government violated *Brady* by failing to disclose the FBI 302 of the Jones interview. ECF No. 13 at 12. He asserts that the content of the 302 would have undermined Lucien's credibility and changed the outcome of the trial. ECF No. 13 at 11. Even if I assume

8

that the Jones 302 contained "favorable evidence" to Mack, which is doubtful because it documents multiple contradictions and the fact that Jones acknowledged lying to investigators, it does not satisfy the second and third components of a *Brady* violation. It does not satisfy the second component – suppression of the evidence – because the Government has shown in its response to Mack's petition that it did, in fact, disclose the Jones 302 to Mack's attorneys. Specifically, the Government submitted a copy of a letter dated October 2, 2014, which states "numerous compact disks" containing "520 Bate stamped pages" were "overnight mailed" to Mack's lawyers. ECF 20-1 at 2. The Bate stamps on the FBI Jones interview are within the range of Bate-stamped pages disclosed, which indicates that the Government sent the Jones interview summary to Mack's lawyers on October 2, 2014. ECF No. 20 at 5, ECF No. 20-1 at 2, ECF No. 9-1 at 2-4. In addition, as the Government points out, a memo apparently prepared by defense counsel and including handwritten notations by Mack himself, strongly suggests that defense counsel and Mack were aware of the Jones 302. *See* ECF No. 9 at 7 (Govt's initial brief noting that Jones was described in defense counsel's memo as Mack's cousin who had "initially denied his nickname was '40'").[5]

    The Jones 302 also fails the third component of a *Brady* violation – prejudice. As discussed, the 302 memorializes an interview in which Jones admits he lied to the interviewers – about making three-way prison calls – and changes his version of the facts two other times –

---

[5] The memo, entitled "Dominique Mack: People, Places, Things and Entities," ECF No. 178, was found at the detention facility where Mack was staying and included both typed and hand-written comments on a list of names related to the case. The memo appears to have been prepared by defense counsel and to show handwritten comments made by Mack. The typed comments, likely made by defense counsel or the defense investigator, summarized the connection of each name to the case. The typed comments next to Jones's name neatly tracked the FBI 302: "Jones, Laquan: interviewed by prosecution, cousin of [Dominique Mack,] denied knowing [Ian] Francis [the victim], initially denied making three-way prison calls, initially denied his nickname was '40'." ECF No. 178 at 4, 6. Contrary to Mack's claims (ECF No. 25 at 3), the memo, together with the Government's evidence of transmission of the 302 to defense counsel, leave little doubt that the defense team had received and reviewed Jones's FBI 302.

9

once about his nickname and a second time about the first name of a friend who was killed. See ECF No. 9-1 at 3. Contradicting the Jones declaration, the 302 also recounts that Jones had not seen Mack – his cousin – since a year before the Francis shooting, even though, at the time of the shooting, his and Mack's phones were in frequent communication with each other and in close proximity to each other and to the site of the shooting. As shown, all this made Jones an unreliable witness who was vulnerable to impeachment, and so airing the contents of the 302 at trial would not have materially helped Mack.

Nor would it have materially helped to impeach Lucien, which disposes of Mack's related argument that, if the 302 was disclosed to defense counsel, they rendered ineffective assistance in failing to confront Lucien with it. The 302 itself was hearsay and, because it did not memorialize Lucien's own out-of-court statement, it is not clear how its contents would have been admissible during his cross-examination. Even if defense counsel had succeeded in introducing portions of it while cross-examining Lucien, counsel's own credibility with the jury might have suffered. In response to any attempt to use Jones's 302 against Lucien, the Government would have pointed out the internal contradictions, and admitted lie, within the statement, as well as the contradictions between the statement and the specific – and compelling – cell phone evidence. All of that would have blunted the value of the statement as a tool for cross-examining Lucien. *United States v. Avellino*, 136 F.3d 249, 257 (2d Cir. 1998) ("[I]mpeachment evidence is not material in the *Brady* sense when, although possibly useful to the defense, it is not likely to have changed the verdict." (internal quotation marks omitted)). So Mack's lawyers made a reasonable decision not to try to use it to confront Lucien, especially when one considers the much more compelling impeachment evidence with which they did confront Lucien. Indeed, defense counsel cross-examined Lucien extensively – on his

10

involvement in various shootings, his lying about knowing Francis, his felony convictions, his pending perjury charges, and his involvement in the conspiracy to murder Jernigan, among many other unflattering topics. *See, e.g., U.S. v. Mack*, 13-CR-54, ECF No. 471 at 71, 87.

### 2. False Testimony

Mack argues that the Government presented false testimony, claiming that "Tyquan Lucien's testimony [was] false because Mack, Jones and Jernigan [were] not together at Jernigan's apartment the day before Francis is murdered," and, as a result, "there exist[s] no statement by Mack that Ian Francis 'has to go' and there exist[s] no agreement/conspiracy to murder Francis." The Government, Mack contends, "knowingly used [this] false testimony of Tyquan Lucien[.]" ECF No. 13 at 5, 7. To challenge a conviction because of a prosecutor's knowing use of false testimony, the petitioner must establish that (1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

This claim fails because Mack has not established that there was false testimony. As discussed above, the declarations do not suggest that Lucien's testimony about the meeting at Jernigan's residence was untrue because, even if the statements in the declarations are accepted as true, that meeting could have occurred after Mack and Jones left Christian's residence. Lucien's testimony was also corroborated by evidence showing that Jones's cell phone was communicating with Mack's and Jernigan's phone on December 21, 2010, including around the time of the shooting, and that signals from Jones's and Mack's phones were bouncing off the same tower, itself located near Jernigan's residence, around the time of the shooting. So Mack

11

has failed to show that Lucien's testimony was false, let alone that the Government knew or should have known it was.

C. **Actual Innocence**

Mack claims the declarations he submitted "ably support[] that Mack is actually innocent of conspiracy to murder Francis and Jernigan[]" and "that innocence itself constitutes a constitutional violation." ECF No. 1 at 8. "The Supreme Court has not finally resolved the issue of whether there is a federal Constitutional right to be released upon proof of actual innocence." *Gross v. Graham*, 802 Fed.Appx.16, 20 (2d Cir. 2020) (Summary Order). Assuming for the sake of argument that there is, "a habeas petitioner must make a sufficiently credible and compelling claim of innocence." *Jimenez v. Stanford*, 96 F.4th 164, 185 (2d Cir. 2024) (internal quotes omitted). "A compelling innocence claim must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find the petitioner guilty beyond a reasonable doubt." *Id.* (internal punctuation, alteration and quotation marks omitted). Mack has not come close to satisfying this demanding standard. As discussed above, the declarations do not provide Mack with an alibi, rebut Lucien's version of events, or otherwise suggest that Mack did not conspire to murder Francis.

D. **The Concurrent Sentence Doctrine**

Even if I did not reach the conclusions set forth above, I would deny Mack's petition under the "concurrent sentence doctrine." Under that doctrine, "a court may decline to consider a challenge to a conviction for which [a petitioner's] sentence runs concurrently with that for another, valid conviction." *Al -'Owhali v. United States*, 36 F.4th 461, 466 (2d Cir. 2022). "The doctrine authorizes a court to leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment." *Id.* (internal quotation

12

marks omitted); *see id.* ("We recently held that the concurrent sentence doctrine remains available in a collateral challenge to a conviction or sentence under [Section] 2255.").

Mack was sentenced to two concurrent terms of life imprisonment on counts one (conspiracy to commit witness tampering in causing the death of Ian Francis) and four (conspiracy to commit witness tampering by conspiring to murder Charles Jernigan), as well as ten years of imprisonment, concurrent with the life sentences, for each of the firearm possession convictions. *U.S. v. Mack*, 13-CR-54(MPS), ECF No. 431 at 1. The "new evidence" Mack has submitted in this case – the declarations of Jones and Christian – relates only to the conspiracy to murder Francis, not to the conspiracy to murder Jernigan, which was not formed until after Mack was awaiting trial on charges related to the Francis conspiracy. Similarly, all of Mack's arguments about Jones's 302 statement and Lucien's alleged lying about the meeting at Jernigan's house relate to the conspiracy to murder Francis, not the later-formed conspiracy between Mack and Lucien himself to murder Jernigan. While Mack does state in his his petition that Jones's and Christian's testimony "could have affected the judgment of the jury and changed the outcome of the trial in regard to conspiracy to murder Francis and conspiracy to murder Jernigan," ECF No. 1 at 15; see also ECF No. 13 at 9, he does not explain how their testimony about his whereabouts on the day Francis was murdered relates to the later-formed conspiracy to murder Jernigan, which, again, did not arise until after Mack was facing charges for the murder of Francis.[7]

---

[7] To be sure, Mack could argue that any evidence tarnishing Lucien's credibility would have undermined the conviction on the conspiracy to murder Jernigan, which rested in part on Lucien's testimony. He does not make this argument, apart from a vague reference to "spillover" in his reply brief, ECF No. 25 at 8. But in any event, he makes no specific challenge to Lucien's testimony about facts relevant to the conspiracy to murder Jernigan, and the specific credibility challenge he does make relates to Lucien's testimony about the meeting at Jernigan's house to plot the murder of Francis. Finally, even if the concurrent sentence doctrine did not apply, the same circumstance – that invalidating his conviction on the conspiracy to murder Francis would not touch his conviction on the conspiracy to murder Jernigan – would be a further basis for finding that he has failed to show any prejudice from

13

Because he is already serving a mandatory life sentence on the conviction for conspiring to murder Jernigan, I need not consider Mack's arguments targeting his conviction for conspiring to murder Francis, because even if I found them convincing, a decision to invalidate his conviction on the latter charge would have no effect on his term of incarceration.

### E. Request for Hearing

Mack requested an evidentiary hearing. ECF No. 25 at 2. In deciding a Section 2255 motion, the Court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b) of Rules Governing Section 2255 Proceedings ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). In deciding whether to hold a hearing, "[t]he court … determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner … may be able to establish at a hearing a prima facie case for relief." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Id.* But "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Id.* at 214. And no hearing is required "where the allegations are vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks omitted).

The Court is not required to afford Mack an evidentiary hearing because he has not established a plausible claim for ineffective assistance of counsel, a *Brady* violation, or other

---

the alleged defects he raises. See *Al -'Owhali,* 36 F.4th at 466 (describing concurrent sentence doctrine as "[a] species of harmless-error analysis" (internal quotation marks omitted)).

14

prosecutorial misconduct. *See United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993) ("To prevail on his motion for a hearing, [the plaintiff] must establish that he has a 'plausible' claim for ineffective assistance of counsel."). As shown above, the declarations from Jones and Christian, even if taken as true, do not furnish Mack with an alibi, Jones was highly vulnerable to impeachment due to his admitted lying and the stark contradictions between his versions of events, and Christian's proposed testimony is too vague to be helpful. As for the FBI 302, all the evidence indicates that the defense team had it and, inasmuch as it memorialized an interview with Jones, its utility suffered from its hearsay status and Jones's vulnerability to impeachment, making it reasonable for defense counsel to stay away from it at trial. Finally, Mack has failed to raise a plausible claim that Lucien's testimony was false, let alone that the Government knew or should have known that it was, or that he was innocent of the conspiracy to murder Ian Francis. As the judge who presided over the trial, I find that no hearing, evidentiary or otherwise, is needed to establish any of these points.

## IV. CONCLUSION

For the reasons above, I deny the motion to vacate, set aside, or correct Mack's sentence under 28 U.S.C. § 2255. (ECF No. 1).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
July 29, 2024

15